**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**IP INVESTORS GROUP LLC,**

                       Plaintiff,

*~ against ~*

**SEDICII INNOVATIONS LIMITED;**
**ROBERT LESLIE** *as Trustee of the Employee Share*
*Participation Program;*
**ROBERT LESLIE,** *personally*;

                       Defendants,

Case No.: **_____/_____**

**ORIGINAL**
**VERIFIED COMPLAINT**

---

    **NOW COMES** Plaintiff **IP INVESTORS GROUP LLC**, by and through counsel, with their Original Verified Complaint against the Defendants **SEDICII INNOVATIONS LIMITED; ROBERT LESLIE**, as Trustee of the Employee Share Participation Program; and **ROBERT LESLIE**, personally, and does respectfully allege as follows:

**A.**       **NATURE OF THE CASE**

    1.    In and around September 2021, the Defendants fraudulently induced investors across the United States to invest six hundred and ten thousand Euros (EUR 610 000) in Defendants' company on the basis of what has now been shown to be a bogus "Summary of Terms for IP Series Equity Financing" and other false representations.  Plaintiff's Members include many of those victimized investors.

    2.    Among other things, the Defendants falsely represented to the Plaintiff's Members that the Defendants were in a position to enable the Plaintiff's Members to exchange their investment into Integra Tokens (later known as "Nillion Tokens") at a promised valuation. These false representations were material and were intended to induced the Plaintiff's Members to

make their investment.   In reasonable reliance on those false representations the Plaintiff's Members invested with the Defendants.

3.      Plaintiff's Members have since learned that the Defendants had no agreement in place with Integra to enable the investors to exchange their investment into Integra Tokens; had negotiated in bad faith with Integra (also known as Nillion); and in furtherance of their own agenda have frustrated any deal with Integra.

4.      As a consequence, the Plaintiff's Members were unable to exercise their promised rights and they have suffered substantial financial losses and damages as a result.

5.      Additionally, and in the alternative, even if the investment was not induced entirely by fraud, the Defendants committed in signed agreements in the Autumn and Winter of 2021 that the Defendants had a deal with Integra and would otherwise take all steps required to "complete the Integra Subscription Agreement".

6.      Despite Plaintiff's full compliance with all of their obligations under the alleged Agreement between the Parties, the Defendants breached their obligations by not having a deal in place with Integra and by failing to finalize the Integra Subscription Agreement.

7.      As a direct consequence of the Defendants breaches, the Plaintiff's Members have been unable to exchange their payment to Defendants' company into Integra Tokens.  Plaintiff's Members have directly suffered substantial financial damages as a result.

8.      Plaintiff's Members have made good faith efforts to resolve this matter directly with the Defendants, who failed to cooperate.  Left with no other option, the Plaintiff seeks judicial intervention in the nature of a judgment against Defendants in the amount of their share of the not less than six million and three hundred thousand United States dollars ($6,300,000.00) (the

current valuation of the Integra tokens Defendants promised the investors) plus interest, legal fees, exemplary damages, and other damages in an amount to be decided at the jury trial.

### B.       PARTIES

*i.*    *Plaintiff:*

9.      Plaintiff **IP INVESTORS GROUP LLC** is a limited liability company organized under Wyoming law.  All of its members are citizens of the United States including but not limited to New York, Florida and Puerto Rico; and are not residents or citizens of Ireland.

10.     Plaintiff has standing because it has been set up as a holding company by its Members – each of whom was a payor to Defendants pursuant to the same false representations and with the same paperwork – to own the Integra Tokens that each Member would acquire had the Defendants complied with their obligations.  Rather than engage in holding and potentially investing with the Integra Tokens, the Plaintiff's business has been diverted to the enforcement of its Members' rights as against the Defendants for Defendants' torts against Plaintiff's Members.

11.     To the extent that this Honorable Court were to determine that the Plaintiff has no associational standing with respect to the claims in this Original Verified Complaint, the Plaintiff will amend, with leave of Court if required, to sue directly in the name of its Members.

12.     Where appropriate in this Complaint, the Plaintiff is referred to as the "Investors".  The use of the name "Investors" is not intended to imply that the Plaintiff or its Members – who as the alleged in this Original Verified Complaints were the victims of a scheme and not *bona fide* investors in a legitimate investment –were not victims of a fraud.

13.     Non-party Murad Michael Khan is a natural person resident at the City, County and State of New York.  On October 4, 2021, he paid EUR 25 000 to Defendants as part

of the scheme described in this Original Verified Complaint.  He is the Managing Member of Plaintiff.

14.     For Diversity purposes, non-Party Murad Michael Khan is a citizen and resident at New York and not a citizen of Ireland.

15.     For illustrative purposes another Non-party Kyle Armour is a natural person resident at Puerto Rico who paid EUR 10 000 to Defendants as part of the scheme described in this Original Verified Complaint.  He is a Member of Plaintiff.

16.     For Diversity purposes, non-Party Kyle Armour is a citizen of and resident at Puerto Rico and not a citizen of Ireland.

17.     For illustrative purposes another Non-party Unworq LLC is a limited liability company organized and existing under Florida law which paid EUR 20 000 to Defendants as part of the scheme described in this Original Verified Complaint.  It is a Member of Plaintiff.

18.     The sole Member of Unworq is a citizen of and resident at Florida.

19.     For Diversity purposes, Unworq is a citizen of its Sole Member's citizenship and is therefore a citizen of and resident at Florida and not of Ireland.


ii.     *Defendants:*

20.     At all times relevant to this Original Verified Complaint, Defendant **SEDICII INNOVATIONS LIMITED** was and it remains a Private Company Limited by Shares incorporated and existing under Irish Law.

21.     At all times relevant to this Original Verified Complaint, Defendant **SEDICII INNOVATIONS** was an unauthorized foreign corporation engaged in business in New York State including but not limited to the solicitation of the investments at issue in this Complaint.

22. At no time was Defendant **SEDICII INNOVATIONS LIMITED** authorized to issue shares in New York State; or to conduct business in New York State.

23. At all times relevant to this Original Verified Complaint, **ROBERT LESLIE** was the President, member of the Board of Directors, primary corporate decision-maker, and – through his personal ownership of Sedicii shares and his role as Trustee of the Trust – controller of the majority of the ordinary shares of **SEDICII INNOVATIONS LIMITED**.

24. Where appropriate in this Original Verified Complaint, Defendant **SEDICII INNOVATIONS LIMITED** is sometimes referred to as "**Sedicii**".

25. At all times relevant to this Original Verified Complaint, the Defendant **ROBERT LESLIE** was a natural person who upon information and belief was resident at 4 Ballinakill Vale, Dunmore Road, Ballinakill at County Waterford in Ireland.

26. At all times relevant to this Original Verified Complaint, the Employee Share Participation Program was a Trust settled and existing under Irish law whose sole Trustee is Defendant **ROBERT LESLIE**.

27. Where appropriate in this Original Verified Complaint, the Employee Share Participation Program is sometimes referred to as the "**Trust**".

28. **ROBERT LESLIE** is named in this Original Verified Complaint both in his capacity as the Trustee of the Employee Share Participation Program and – separately – in his personal capacity as the promoter of the fraud and the individual who committed the breaches described in this Original Verified Complaint.

29. Where appropriate in this Original Verified Complaint, Defendant **ROBERT LESLIE** is sometimes referred to as "**Leslie**" and – together with Sedicii – as the "**Defendants**".

*iii.*     ***Defendants' Co-Liability***

30.     Each of the Defendants faces direct liability for the fraud and misrepresentations made to induce the Plaintiff's Members to make their investment and alternatively for the Defendants' breach of the parties' contract.

31.     Additionally and/or in the alternative, upon information and belief, at all times relevant to the acts and omissions that gave rise to this Original Verified Complaint, Defendants had express authority to act as each other's agents when they engaged in the acts and omissions that give rise to the claims under this Original Verified Complaint.

32.     Additionally and/or in the alternative, upon information and belief, at all times relevant to the acts and omissions that gave rise to this Original Verified Complaint, Defendants were under agents, representatives, co-venturers, and otherwise alter-egos of one another, and therefore liable for the acts and omissions of the other.

33.     In addition, Defendants are in possession of the full information about their relationship with one another and the Defendants' co-liability.  Plaintiff therefore respectfully reserves the right to seek leave, to the extent leave is required, to file an Amended Complaint further detailing the Parties' relationship and co-liability, when such information is made available to the Plaintiff.

## C.     JURISDICTION AND VENUE

34.     This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the amount in dispute exceeds the sum of seventy-five thousand United States dollars ($75,000.00), exclusive of interest and costs.

35.     In addition, the Plaintiff is an LLC all of whose members are natural persons resident in and citizens of Puerto Rico and New York; and an LLC whose sole member is resident at and a citizen of Florida.  All of the Defendants are citizens and residents of Ireland.

36.     This Court has personal jurisdiction over the Defendants pursuant to New York Civil Practice Laws and Rules § 301, et seq. and other relevant provisions of New York and Federal law because the Defendants regularly transact business in the State of New York, including the solicitation of the investment at issue in this Original Verified Complaint and the fraudulent inducement and breach of contract that took place here.

37.     Additionally, and in the alternative, the Defendants expressly consented in writing that they were soliciting investments and conducting fundraising activities in New York by referring to some of their victims as the "NYC Investors", as illustrated *passim* in the December 31, 2021 Amended and Restated Shareholders Agreement.

38.     A true, accurate and complete copy of the December 31, 2021 Amended and Restated Shareholder Agreement referenced above is annexed as **Exhibit A** to this Original Verified Complaint and incorporated in full by reference.   **Exhibit A** has been redacted of personally identifying information, bank accounts and other private information.  Defendants are in possession of the unredacted version and will be disclosed the unredacted version during discovery subject to an appropriate Confidentiality Order being entered to preserve the PII of various parties.

39.     Venue is proper here in the Southern District of New York because the Defendants engaged in substantial business in New York County, including but not limited to the solicitation of the investment at issue in this Original Verified Complaint and the fraudulent inducement and breaches of contract that took place here.

40.     At no time have the Parties entered into any Arbitration Agreement or other agreement that includes a binding arbitration clause with respect to the issues raised in this Original Verified Complaint.

41.     At no time, have the Parties entered into any Settlement Agreement addressing or compromising on the claims described in this Original Verified Complaint.

42.     The liability described in this lawsuit accrued at the earliest in September 2021 and no Statute of Limitations has expired with respect to any of the Causes of Action alleged in this Original Verified Complaint.

43.     To the extent that the Parties are deemed to have entered into an Agreement, the Agreement expressly provides that its jurisdiction clause is permissive, specifically that:

> "14.14.2    Each of the Parties hereto irrevocably and unconditionally submits to the <u>non-exclusive</u> jurisdiction of the courts of Ireland for any of the purposes of this Agreement."

Exhibit A at p. 19 (emphasis added).

The jurisdiction clause provides that there is at least one jurisdiction where the disputes arising from the parties' relationship may arise, but expressly disclaims any commitment by the Plaintiff's Member to the exclusive jurisdiction of any particular Court.  Therefore, nothing in the Parties' alleged Agreement limits the filing of a lawsuit with this Honorable Court.

44.     Additionally, and in the alternative, the original binding agreement signed by the parties in September 2021 (discussed below) provided no jurisdiction clause.

45.     Additionally, and in the alternative, in this Original Verified Complaint, the Plaintiff has plausibly alleged that any agreement with the Defendants was fraudulently induced and therefore any jurisdiction clause in the alleged agreements is academic because the Parties did

not validly enter into any agreement, and would not be bound by any purported jurisdiction clause in that dead-letter agreement.

46.     Additionally, and in the alternative, the Term Sheet provided that key provisions were not subject to later amendment notwithstanding any later-signed agreement; and therefore any jurisdiction clause in a later-signed agreement is not binding.

47.     Any and all conditions precedent to the filing of this suit have been satisfied.

### D.      FACTUAL ALLEGATIONS

48.     In 2021, Leslie went on a Roadshow to promote investment in Sedicii.  In the fundraising context, a "Roadshow" refers to when a business promoter circulates among potential investors through virtual and in-person meetings, the sharing of prospectuses, and physical travel to meet with investors in key markets.

49.     Leslie's 2021 Roadshow included direct solicitation of potential investors in New York and physical travel to meet with potential investors in New York.

50.     Leslie's 2021 Roadshow was aimed at promoting investment in Sedicii, whose primary selling point was Defendants' alleged relationship with the Integra Network – a blockchain project that filled an important market niche during the 2021 cryptocurrency boom and one of the few projects that have been very successful – and the opportunity for investors to exchange any investment made with Sedicii into Integra Tokens.

51.     Upon information and belief, Leslie had a second, undisclosed motive for his Roadshow beyond simply raising money for Sedicii.  At the time of the Roadshow, Sedicii faced a looming deadline for a required redemption by certain preferred shareholders in Sedicii. Leslie was under pressure to meet certain fundraising targets before the end of 2021, or Sedicii

and Leslie would have to pay out approximately EUR 900 000 to buy back the preferred shares. To avoid the buy back, Leslie needed to raise at least EUR 600 000 to meet the required threshold necessary to allow preferred shareholders to convert their shares into ordinary shareholders, rather than trigger the buy back.  Since neither Leslie nor Sedicii had any other access to the required EUR 900 000, their failure to close a new fundraising round would have been a corporate death sentence for Defendants.

52.     Upon information and belief, the undisclosed motive for the Roadshow described above was one of the impetuses for the fraud and false representations made by the Defendants as they pulled out all ethical stops to close a fundraising deal. This was done quickly and in complete disregard for New York, United States and other relevant law relating to the solicitation and selling of securities.

53.     Upon information and belief, on or about the same period as the Roadshow, Sedicii was exploring a deal to provide certain technology under development to a new start up called Integra Network (later known as Nillion).  Leslie disclosed and highlighted the Integra deal in his personal meetings, telephone calls, virtual meetings, and written communications – it was the Defendants' key leverage to raise funds.

54.     Leslie played the "Integra card" by falsely claiming that Sedicii was ready, willing and able to enter into a business deal with Integra that involved the transfer of Sedicii's IP via an exclusive Master Licensing Agreement in return for a percentage of Integra Tokens.  Leslie personally made this claim and on behalf of Sedicii even though no deal had been closed with Integra.

55.     Upon information and belief, no investor to whom the Roadshow was aimed had any interest in investing in Sedicii; but as promoted by the Defendants, the investment was

merely a vehicle to get a "piece of the pie" of Integra Tokens.  This was certainly true of the Plaintiff's Members who were solicited solely on the basis of the claims about the deal being in place between Sedicii with Integra.

56.    Defendants expressly represented orally and in writing (including the Term Sheet) that the terms of the Master Licensing Agreement had already been agreed upon and that Sedicii was in a position to comply with its "obligation" to close the deal with Sedicii.

57.    These representations about the deal with Integra were the *essence of the deal*, and the sole selling point and primary factor in any investor's decision to participate in the fundraising round – certainly that was true of the Plaintiff's Members.

58.    These representations about the deal with Integra were factual claims about currently existing facts and not forward-looking statements or otherwise presented as a potential or contingent future event.

59.    If an investor did not have the ability to exchange their investment with Sedicii into Integra tokens, or if they knew that Sedicii had no intention of executing an agreement with Integra, the investors would have not have made their investment – and that was certainly true of the Plaintiff's Members.

60.    On or about September 2021, the Defendants submitted an offer in writing to the Plaintiff's Members.  That offer was reflected in a document titled "Summary of Terms for IP Series Equity Financing" and was the same document offered to each potential investor.

61.    A complete, true and accurate copy of the "Summary of Terms for IP Series Equity Financing" as signed by non-Party Khan is annexed as **Exhibit B** and incorporated in full by reference in this Original Verified Complaint.  Exhibit B has been redacted of personal identifying information including bank accounts numbers and other private information.

Defendants are in possession of the unredacted version and will be disclosed the unredacted version during discovery subject to an appropriate Confidentiality Order being entered to preserve the PII of various parties.

62.     Where appropriate in this Agreement, we refer to Exhibit B as the "September 2021 Offer", the "Term Sheet", or similar language to distinguish it from the later signed Exhibit A.

63.     The September 2021 Offer describes itself as: "a binding equity financing term sheet"; and that "[t]his term sheet is binding on the Company and the IP Investors" (both quotes from the preamble to the Offer).

64.     In the business investment community, the term "Term Sheet" often refers to a document with an outline of ideas and potential terms for a *future agreement*.  That was not the case here.  In this case, the self-described Term Sheet expressly provided that it was a legally binding agreement and not merely an "Agreement to Agree".

65.     Defendants, acting on the advice of highly competent counsel and after Leslie's communications and detailed bargaining with potential investors, drafted the Term Sheet to be valid and enforceable on its own terms; and not an "Agreement to Agree".  Leslie touted the Term Sheet orally and in writing as the driving factor for the investment by Plaintiff's Members.

66.     Upon information and belief, the reason for the decision to offer a *binding* Term Sheet (rather than an "Agreement to Agree"-style Term Sheet) was because of the looming preferred investor redemption deadline described above.  Specifically, Defendants were up against a very tight deadline to raise funds for Sedicii, and the Defendants were motivated to raise funds by any means possible even if it required the violation of Securities laws, and fraudulent misrepresentations to investors.

67.     The September 2021 Offer provides that any later agreement would be derivative and subject to the terms of the Term Sheet, which spells out the binding terms between the parties.  To wit:

> "The Company, the ESPP Trust, and the IP Investors are obligated to consummate the equity financing and the subsequent Share Purchase Agreement, which between the Company, the ESPP Trust, and IP Investors may be exercised at a later date."

Exhibit B, p.1

68.     The Agreement reflected, in part, some of the express representations made by Leslie.  These include the following key relevant terms:

> "***Token Distribution Agreement***: Company agrees that it is obligated to enter into an agreement, or required agreements (collectively, the "***Token Distribution and Master License Agreement***"), with the Integra Network, or otherwise similarly named company (the "***Integra Network***") for the purpose of distribution of 8.5% of the tokens from the fully diluted Integra Network Token Pool ("***Integra Tokens***") to the Company as consideration in exchange for a perpetual license for the use of the proprietary or patented Sedicii technologies, certain assets, software, and goodwill. The Company will grant to the Integra Network the exclusive right to use the licensed Sedicii technologies for: (1) the creation, development, expansion, and operation of a decentralized network; and (2) associated use cases including sensitive information storage and computation, identity verification, and cryptocurrency technologies, which are commercially connected to the Integra Network.
>
> * * *
>
> In the Token Distribution and Master License Agreement, the Company shall require that forty-one and 18/100 percent (41.18%) of all distributed Integra Tokens (equivalent to 3.5% of the fully diluted token pool) are distributed directly to the Company's Employee Share Participation Program Trust ("ESPP Trust"). The rights granted by Company to IP Investors in this

> Agreement, including but not limited to the Token Distribution and Master License Agreement, shall not be subject to alteration except with the written approval of at least two thirds of the IP Investors.

Exhibit B, p.2

69.     To emphasize, the Defendants entry into the "Token Distribution and Master License Agreement" was an "Obligation" that Defendants freely undertook and was the essence of the deal.

70.     The September 2021 Offer spelled out the specific terms of that Master License Agreement that Defendants were "Obligated" to close.  That "Obligation" was consistent with the representations made by the Defendants that Defendants had purportedly finalized a deal with Integra and that Defendants were ready, willing and able to move forward with the Master License Agreement with Integra.

71.     The investors – and the Plaintiff's Members – made their investment on the basis of Defendants' factual representations about *currently existing facts* about the agreement terms with Integra having allegedly been finalized.

72.     To further emphasize, the excerpt above makes clear that the rights granted under the Master License Agreement, "shall not be subject to alteration except with the written approval of at least two thirds of the IP Investors", and were not forward-looking statements, contingent or otherwise subject to change.  At no time did two thirds of the IP Investors consent to the alteration of the rights granted by the Defendants to the IP Investors.

73.     Further, the Term Sheet expressly provides that notwithstanding any vote or further agreements between the Parties, the investors' rights would not be prejudiced or negatively impacted in any way.  The Term Sheet provided:

> "Additionally, the Token Exchange and the rights of the IP Investors shall not be negatively altered in any way by future Shareholder Agreements, Share Subscription Agreements, or any other future agreements from [Sedicii] or its Directors."

> Exhibit B, p. 5.

74.     The September 2021 Offer described the terms of the Master License Agreement as follows:

> "In the Token Distribution and Master License Agreement, the Company shall require that fourty-one and 18/100 percent (41.18%) of all distributed Integra Tokens (equivalent to 3.5% of the fully diluted token pool) are distributed directly to the Company's Employee Share Participation Program Trust ("**ESPP Trust**").

> Exhibit B, p. 2

75.     The September 2021 Offer also described what the Share Purchase Agreement would include.  It describes how the investors would be able to engage in a "Token Exchange" of their interest in Sedicii into Token on the basis of EUR 0,034857 per Token.

76.     The calculation works out that if an Investor (such as Khan who paid EUR 25 000 to the Defendants) would be able to exchange their investment for Integra Tokens on a EUR 0,034857/Token basis (which for Khan would equal 717,216 Integra ("Nilion") Tokens).

77.     As of the filing of this Original Verified Complaint, the Defendants failed to provide the Plaintiff's Members (or any other investor) the option to exchange their investment with Integra Tokens.

78.     Upon information and believe, the current value of each Integra Token (now known as Nillion Tokens) is not less than eighteen cents ($0.18).  The basis for the allegation about the current value of Integra Token is the personal knowledge of Plaintiff's Members and public reporting on the success of the Integra Tokens.

79.     The Defendants obligation to provide the exchange option on a

EUR 0,034857/Token basis is provided in the September 2021 Offer, as follows:

> "The IP Investors shall enter into the Share Purchase Agreement
> with the ESPP Trust giving the IP Investors the right to exchange all
> the Investment Shares for Integra Tokens held by the ESPP Trust at
> any time following the successful completion of the Private Token
> Sale and distribution of the Integra Tokens from the Integra Network
> (the "***Token Exchange***"). The Token Exchange shall be done on the
> basis that a single Integra Token shall have a value of €0.034857
> each, at a fully diluted valuation of €17.4 million, with 500 million
> Integra Tokens having been authorized for issuance. The exchange
> will involve the transfer of 135,610 Ordinary Shares of the Company
> for one hundred percent (100%) of all Integra Tokens distributed to
> the ESPP Trust, at an equivalent value of €610,000. The Token
> Exchange shall not be subject to any dilution or alteration except with
> the written approval of greater than two thirds of the IP Investors.
> Additionally, the Token Exchange and the rights of the IP Investors
> shall not be negatively altered in any way by future Shareholder
> Agreements, Share Subscription Agreements, or any other future
> agreements from Company or its Directors. Further, the Token
> Exchange and the rights of the IP Investors shall not be negatively
> altered in anyway by subsequent dilution or other events related to
> the issuance, allocation, or creation of new or additional shares of
> the Company. Upon completion of the Token Exchange, the
> Investment Shares shall be irrevocably transferred to the Sedicii
> Employee Share Participation Program Trust. The IP Investors, the
> ESPP Trust and the Company agree to complete all required
> documentation to give full legal force to the transfer. Once completed
> the mutual transfers will be irrevocable."

Exhibit B at pp. 5-6.

80.     To summarize the deal described in the September 2021 Offer:

a.      Investors pay Sedicii a total of EUR 610 000 pursuant to the
Term Sheet, as the binding legal agreement between
Defendants and each investor;

b.      Sedicii is obligated to sign a Master License Agreement
(which has already been finalized);

c.      The investors as a group would receive 3.5% of the Integra
Token pool pursuant to the Master License Agreement;

d.      Under the Master License Agreement, Sedicii would ensure
that the Investors' Tokens would be stewarded by the Trust;

e.    The investors may exchange their investment in Sedicii into Tokens on a EUR 0,034857/Token basis; *and*

f.    The Investors' rights would not be negatively impacted by any future agreement between the Parties.

81.    The September 2021 Offer contains no jurisdiction clause.

82.    On the basis of Leslie's representations of the currently existing facts about the Master License Agreement having been finalized; and the express terms of the September 2021 Offer, the Plaintiff's Members paid money to Defendants.

83.    Those payments included, but are not limited to the following:

a.    Khan paid Defendants EUR 25 000 in October 2021 by international wire to Sedicii; *and*

b.    Armour paid Defendants EUR 10 000 in September 2021 by international wire to Sedicii; *and*

c.    Unworq LLC paid Defendants EUR 20 000 in September 2021 by international wire to Sedicii, etc.

84.    At the time of these payments described above, the Term Sheet was the only alleged agreement in place between Defendants and the Investors.

85.    Integra Network has since been renamed as "Nillion" and as indicated in the September 2021 Offer, Sedicii's obligations apply regardless of the name of the Token.  *See* Exhibit B at "Token Distribution Agreement" describing Defendants' obligations with "Integra Network, or other similarly named company".  In this Original Verified Complaint we refer to the Tokens as "Integra" consistent with the Defendants' written obligations, despite the later change of name of the company and its Token to "Nillion".  For the avoidance of doubt, it is undisputed that Nillion is the same Token as Integra (merely renamed).

86.    In December 2021, the Defendants caused to be prepared an "Amended and Restated Shareholders Agreement", shown at Exhibit A.

87.     Notwithstanding Leslie's representations made to induce the Plaintiff's Members to sign the September 2021 Offer and the Amended and Restated Shareholders Agreement, to the contrary and their obligations, the Defendants failed to provide the Plaintiff's with any valid option to convert their investment into Integra tokens.

88.     The conversion option was of the essence of the agreement and as provided in the Term Sheet, was not subject to amendment notwithstanding any other later agreement to the contrary.

89.     Further, upon information and belief, in violation of their obligations, the Defendants *failed* to enter into an agreement with the Integra Network and *failed* to provide the required protections for the Plaintiff's Members, in breach of Defendants' obligations to the Plaintiff's Members.

90.     In addition, on or about October 19, 2021, the Defendants entered into a "Charge" (roughly equivalent to a lien) of all outstanding shares in Sedicii (including the Plaintiff's Members) and all of Sedicii's intellectual property owned by Sedicii without disclosure of the Charge to the shareholders and upon information and belief for Leslie's personal benefit.

91.     A complete, true and accurate copy of the Charge as provided by the Irish corporate authorities is annexed **as Exhibit C** and incorporated in full by reference.

92.     Since that time public reports have indicated that Integra Networks (now known as Nillion) have raised millions of dollars and upon information and belief the value of each token is at least eighteen cents ($0.18).

93.     The damaged suffered by Plaintiff's Members proportional to their individual investments is in the hundreds of thousands of dollars.

## AS AND FOR THE FIRST CAUSE OF ACTION
(Fraudulent Inducement)
(Plaintiff against all Defendants)

94.     Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

95.     In the Summer of 2021 Robert Leslie spoke with the Plaintiff's Members and other potential investors through a variety of media, at personal meetings, virtual meetings, teleconferences and in writing about the then-existing ability of Defendants to finalize the Licensing Agreement with Integra.

96.     Additionally, Defendants represented in writing that:

"***Token Distribution Agreement:***     Company agrees that it is obligated to enter into an agreement, or required agreements (collectively, the "Token Distribution and Master License Agreement"), with the Integra Network, or otherwise similarly named company (the "Integra Network") for the purpose of distribution of 8.5% of the tokens from the fully diluted Integra Network Token Pool ("Integra Tokens") to the Company as consideration in exchange for a perpetual license for the use of the proprietary or patented Sedicii technologies, certain assets, software, and goodwill. The Company will grant to the Integra Network the exclusive right to use the licensed Sedicii technologies for: (1) the creation, development, expansion, and operation of a decentralized network; and (2) associated use cases including sensitive information storage and computation, identity verification, and cryptocurrency technologies, which are commercially connected to the Integra Network.

. . .

The rights granted by Company to IP Investors in this Agreement, including but not limited to the Token Distribution and Master License Agreement, shall not be subject to alteration except with the written approval of at least two thirds of the IP Investors."

Summary of Terms for IP Series Equity Financing at p. 2 (Exhibit B).

97.     A true, complete and accurate copy of the Amended and Restated Shareholders Agreement is annexed as Exhibit B and incorporated by reference in this Original Verified Complaint.

98.     In this Cause of Action, the representations described above are referred to as the "Representations".

99.     The Representations about the Token Distribution and Master License Agreement and the readiness, willingness and ability of Defendants to allow the Plaintiff's Members to exchange their investment into Integra Token were not true.

100.    The Representations were not statements about future events, but were specific references about the currently existing agreements with Integra.

101.    The purported "entire agreement clause" in the "Amended and Restated Shareholders Agreement" does not disclaim the Plaintiff's Members reasonable reliance on the Term Sheet and the Representations.  In addition, the contract as a whole was induced by fraud.

102.    The Defendants' Representations induced the Plaintiff's Members to make their investment into the Defendants.

103.    The Defendants' Representations induced the Plaintiff's Members to sign the Term Sheet and the purported Amended and Restated Shareholder Agreement.

104.    The Defendants knew that the Representations were false when made.

105.    The basis for Plaintiff's allegations that that the Defendants knew the representations to be false include the facts and circumstances described above.

106.    In addition to the above, the Defendants have since made the audacious claim that the Term Sheet was "simply an agreement to agree or put in place certain matters". December 9, 2022, Letter by Anonymous Attorney under the *nom de plum* Beauchamps LLP on

behalf of Defendants to Khan Johnson at p. 1.  A true, accurate, and complete copy of the Defendants' December 9, 2022 letter is annexed as Exhibit D and incorporated by reference in full into this Original Verified Complaint (referred to here as the "Defendants' Admissions").

107.    The Defendants' Admissions concedes that the Defendants knew from the outset that they did not see the Term Sheet as binding and intended to fraudulently induce the investors to make their payments in time to avoid the preferred shareholder buy back being exercised.

108.    For the avoidance of doubt, at no time does the December 9, 2022 make an offer or otherwise discuss the settlement or compromise of any dispute between the Parties and is therefore admissible as evidence.

109.    The Defendants intended to induce the Plaintiff's Member to make the investment and sign the Term Sheet.

110.    Plaintiff's Members justifiably relied on the Defendants' Representations.

111.    As a direct and proximate consequence of the Defendants' fraudulent inducement, the investors suffered damages in an amount of not less than six million and three hundred thousand United States dollars ($6,300,000.00) (the current valuation of the Integra tokens Defendants promised Plaintiff's Members) and Plaintiff Members demand to be made whole in the proportion of their individual investment plus interest, legal fees, exemplary damages, and other damages in an amount to be decided at the jury trial.

112.    Defendants bear co-liability for the fraudulent inducement because each had a role in making the false representations and is directly liable for the damages.

113.     Defendants bear co-liability for the fraudulent inducement because each obtained a direct benefit from the ill-gotten "investment" and therefore it is reasonable to allege that they each intended to induce such false reliance by the investors.

114.     Each Defendant also bears co-liability for the fraud by the other Defendants because, among other reasons, Defendants were agents, representatives, co-venturers, and otherwise alter-egos of one another.

115.     Defendants are each liable for aiding and abetting fraud by their co-Defendants.


### AS AND FOR THE SECOND CAUSE OF ACTION
(Breach of Contract)
(Plaintiff against all Defendants)

116.     Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

117.     New York Civil Practice Laws and Rules § 3014 provides that "Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency.  Causes of action or defenses may be stated alternatively or hypothetically."

118.     The CPLR further provides that "[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled.  Relief in the alternative or of several different types may be demanded".  CPLR § 3017(a).

119.     Therefore, without prejudice to the other Causes of Action including the First Cause of Action which argues that the Defendants induced the investment and the supposed agreement by fraud, the Plaintiff respectfully alleges in the alternative and hypothetically that they are entitled to relief because the Defendants are liable to the Plaintiff for breach of contract.

120.    Under the Agreement, Defendants obligated themselves, among other things, to enter into a contract with Integra to enable the Plaintiff's Members to exchange their shares in Sedicii into Integra tokens.

121.    Plaintiff's Members complied fully with all their obligations under the Agreement.

122.    Defendants have failed to enter into a contract with Integra and failed to enable the Plaintiff's Members to exchange their shares in Sedicii into Integra Tokens.

123.    As a direct and proximate consequence of the Defendants' Breach of Contract, the investors suffered damages in an amount of not less than six million and three hundred thousand United States dollars ($6,300,000.00) (the current valuation of the Integra tokens Defendants promised Plaintiff's Members) and the Plaintiff Members demand to be made whole in the proportion of their individual investment plus interest, legal fees, exemplary damages, and other damages in an amount to be decided at the jury trial.

124.    Defendants bear co-liability because each was a party to the Agreement and had obligations under the Agreement that they breached.

125.    Each Defendant also bears co-liability for the fraud by the other Defendants because, among other reasons, Defendants were agents, representatives, co-venturers, and otherwise alter-egos of one another.

126.    Defendants are each liable for aiding and abetting the breach of contract by their co-Defendants.

## AS AND FOR THE THIRD CAUSE OF ACTION
(Breach of Fiduciary Duty)
(Plaintiff against all Defendants)

127.    Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

128.    New York Civil Practice Laws and Rules § 3014 provides that "Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency.  Causes of action or defenses may be stated alternatively or hypothetically."

129.    The CPLR further provides that "[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled.  Relief in the alternative or of several different types may be demanded".  CPLR § 3017(a).

130.    Therefore, without prejudice to the other Causes of Action including the First Cause of Action which argues that the Defendants induced the investment and the supposed agreement by fraud, and the Second Cause of Action for Breach of Contract; the Plaintiff respectfully alleges in the alternative and hypothetically that they are entitled to relief because the Defendants are liable to the Plaintiff for breach of fiduciary duty.

131.    Under the relationship between the Parties as provided in writing and otherwise agreed to by the Parties, the Plaintiff's Members reasonably reposed their trust and confidence in the Defendants as their fiduciaries.

132.    Defendants' fiduciary duties included but were not limited to an obligation to finalize the deal with Integra, to professionally steward the investment funds, and to act at all times on behalf of the investors and not in the personal interests of Mr. Leslie (and for the personal interests of Sedicii in a manner that violated its corporate obligations to the Plaintiff's Members).

133.    Defendants breached their duties to the Plaintiff by failing to finalize the deal with Integra, failing to professionally steward the investment, and by filing a Charge that was prejudicial to the interests of the Plaintiff's Members without their authority or consent.

134.    Additionally, Mr. Leslie sought to personally benefit from the Charge to the detriment of the investors including the Plaintiff's Members.

135.    As a direct and proximate consequence of the each Defendants' Breach of Fiduciary Duty, the investors suffered damages in an amount of not less than six million and three hundred thousand United States dollars ($6,300,000.00) (the current valuation of the Integra tokens Defendants promised Plaintiff's Members) and Plaintiff Members demand to be made whole in the proportion of their individual investment plus interest, legal fees, exemplary damages, and other damages in an amount to be decided at the jury trial.

136.    Defendants bear co-liability because each had a fiduciary duty to the Plaintiff that they breached.

137.    Each Defendant also bears co-liability for the fraud by the other Defendants because, among other reasons, Defendants were agents, representatives, co-venturers, and otherwise alter-egos of one another.

138.    Defendants are each liable for aiding and abetting fraud by their co-Defendants.

## AS AND FOR THE FOURTH CAUSE OF ACTION
(Unjust Enrichment)
(Plaintiff against all Defendants)

139.     Each of the foregoing paragraphs is repeated, realleged and incorporated by reference as if set forth fully here.

140.     New York Civil Practice Laws and Rules § 3014 provides that "Separate causes of action . . . shall be separately stated and numbered and may be stated regardless of consistency.  Causes of action or defenses may be stated alternatively or hypothetically."

141.     The CPLR further provides that "[E]very complaint . . . shall contain a demand for the relief to which the pleader deems himself entitled.  Relief in the alternative or of several different types may be demanded".  CPLR § 3017(a).

142.     Therefore, without prejudice to the other Causes of Action including the First Cause of Action which argues that the Defendants induced the investment and the supposed agreement by fraud, and the Second Cause of Action for Breach of Contract; and the Third Cause of Action for Breach of Fiduciary Duty, the Plaintiff respectfully alleges in the alternative and hypothetically that they are entitled to relief because the Defendants are liable to the Plaintiff for breach of Unjust Enrichment.

143.     Each Defendant unjustly benefited from the investments by Plaintiff's Members.

144.     Plaintiff directly suffered damages as a result.

145.     Equity and good conscience require restitution to the investors in the amount of not less than   six million and three hundred thousand United States dollars ($6,300,000.00) (the current valuation of the Integra tokens Defendants promised Plaintiff's Members) and the Plaintiff Members demand to be made whole in the proportion of their

individual investment plus interest, legal fees, exemplary damages, and other damages in an amount to be decided at the jury trial.

146.    Defendants bear co-liability because each was unjustly enriched by the Plaintiff's Members.

147.    Each Defendant also bears co-liability for the unjust enrichment by the other Defendants because, among other reasons, Defendants were agents, representatives, co-venturers, and otherwise alter-egos of one another.

148.    Defendants are each liable for aiding and abetting unjust enrichment by their co-Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for Judgment as follows:

A.    Awarding Plaintiff compensatory damages in the amount of not less than its Members' prorportional amount of the total damages which is more than six million and three hundred thousand United States dollars ($6,300,000.00);

B.    Awarding Plaintiff pre-judgment interest of not less than 9% since the date of the tort through the date of the entry of Judgment;

C.    Awarding Plaintiff post-judgment interest of not less than 9% from the date of the filing of the Complaint through the date of the entry of the Judgment; and 9% from the date of the entry of Judgment through the date of the actual payment of the Judgment to the Plaintiff in full;

D.    Awarding Plaintiff filing fees including the cost of purchasing the index number and service of process (which is $210.00 + $75.00 + $75.00) for a total of **$360.00**;

E.      Awarding Plaintiff's legal fees as provided under Irish Law or otherwise;

F.      Providing Legal and Equitable Relief to which the Plaintiff is entitled; *and*

G.      Awarding Plaintiff such other relief as this Court may deem just and proper under the

circumstances.


**PLAINTIFF RESPECTFULLY
DEMANDS TRIAL BY JURY BY THOSE ISSUES THAT ARE TRIABLE**


Dated: **February 8, 2023**

Respectfully Submitted,

Baruch S. Gottesman, Esq.
New York Bar #4480539
GOTTESMAN LEGAL PLLC
11 Broadway, Suite 615
New York, NY 10004
bg@gottesmanlegal.com
office: (212) 401-6910
*Counsel for the Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IP INVESTORS GROUP LLC,**

                        Plaintiff,

*~ against ~*

**SEDICII INNOVATIONS LIMITED;**
**ROBERT LESLIE** *as Trustee of the Employee Share*
*Participation Program;*
**ROBERT LESLIE,** *personally*;

                        Defendants,

Case No.: **_____/_____**

**<u>VERIFICATION</u>**

       Under penalties for perjury, as provided by law, I Certify that I am the Manager of IP Investors Group LLC and am authorized to sign this Verification on behalf of IP Investors Group LLC.

       I have read the foregoing Original Verified Complaint and the statements set forth are true and correct, except as to those matters stated to be "upon information and belief" and as to those matters I certify that I believe them to be true.

Dated: **February 8, 2023**

                                  RESPECTFULLY SUBMITTED,

                                  _____
                                  Murad Michael Khan
                                  Member and Authorized Signatory
                                  of IP Investors Group LLC