Date 10th September, 2021

## SEDICII INNOVATIONS LIMITED

## SUMMARY OF TERMS FOR
## IP SERIES EQUITY FINANCING

The following is a binding equity financing term sheet, between **Sedicii Innovations Limited**, a company incorporated in Ireland, with company number 537185 and registered at Arclabs Innovation Centre, WIT West Campus, Carriganore, Waterford, Ireland (the "***Company***") and individual **Sedicii IP Round Investors** ("***IP Investors***"). This term sheet is binding on the Company and the IP Investor (as specifically defined below). The Company, the ESPP Trust, and the IP Investors are obligated to consummate the equity financing and the subsequent Share Purchase Agreement, which between the Company, the ESPP Trust, and IP Investors may be exercised at a later date.

| | |
|---|---|
| ***Financing Amount:*** | €610,000 in aggregate principal amount of Ordinary Shares (the "***Shares***"). |
| ***Pre-Money Valuation:*** | €12,000,000 – Twelve million Euro |
| ***Closings:*** | The Company may close the sale of the Shares in one or more closings with one or more purchasers of the Shares acceptable to the Company (individually, the "***IP Investor***"). |

Funds shall be wire transferred to the following account of the Company within 3 business days of closing.

Account Name:   Sedicii Innovations Limited
IBAN:
BIC:
Branch Sort Code:
Bank:
Address:
                         Waterford, Ireland

***The IP Investor:***

The IP Investor is:
Name:   Murad Khan

Address:
           New York, NY 10014 USA


Investment Amount: € 25,000

**Price per share:** €4.4982 per share (the *"Initial Price"*), based on the attached capitalization table

**Amount to be Invested:** A total of €610,000 in Euro or Euro equivalent (135,610 shares) (the *"Investment Shares"*)

**Definitive Agreement:** The Investment Shares will be issued and sold pursuant to a share subscription agreement prepared by the Company's legal representatives and will contain customary representations and warranties of the Company and the IP Investors (the "***Share Subscription Agreement***"). Such Share Subscription Agreement shall not negatively impact any rights granted to IP Investors under this Agreement.

**Closing Date:** On or before 30th September, 2021

**Subsequent Raises:** The Company may raise additional funds through the sales of Ordinary Shares before or after the closing of the sale of the Shares. Concurrent or subsequent sale of Ordinary Shares shall not be considered a part of the Investment Shares. However, any subsequent raises shall not negatively impact any rights granted to IP Investors under this Agreement.

**Amendment and Waiver:** The Share Subscription Agreement and the Shares may be amended, or any term thereof waived, upon the written consent of the Company and at least two thirds of the IP Investors.

**No Security Interest:** The Investment Shares will be a general unsecured obligation of the Company.

**General voting rights:** Each ordinary shareholder will be entitled to vote on all matters at General Meetings of the Company, except as specifically noted herein or required by law.

**Token Distribution Agreement:** Company agrees that it is obligated to enter into an agreement, or required agreements (collectively, the *"Token Distribution and Master License Agreement"*), with the Integra Network, or otherwise similarly named company (the *"Integra Network"*) for the purpose of distribution of 8.5% of the tokens from the fully diluted Integra Network Token Pool (*"Integra Tokens"*) to the Company as consideration in exchange for a perpetual license for the use of the proprietary or patented Sedicii technologies, certain assets, software, and goodwill. The Company will grant to the Integra Network the exclusive right to use the licensed Sedicii technologies for: (1) the creation, development, expansion, and operation of a decentralized network; and (2) associated use cases including

sensitive information storage and computation, identity verification, and cryptocurrency technologies, which are commercially connected to the Integra Network. In the Token Distribution and Master License Agreement, the Company shall require that fourty-one and 18/100 percent (41.18%) of all distributed Integra Tokens (equivalent to 3.5% of the fully diluted token pool) are distributed directly to the Company's Employee Share Participation Program Trust ("***ESPP Trust***"). The rights granted by Company to IP Investors in this Agreement, including but not limited to the Token Distribution and Master License Agreement, shall not be subject to alteration except with the written approval of at least two thirds of the IP Investors.

## SHAREHOLDERS AGREEMENT

| | |
|---|---|
| ***Information rights:*** | The Company will provide to each shareholder (i) unaudited annual financial statements and (ii) unaudited quarterly financial statements and an annual business plan. This right will terminate immediately prior to an IPO of the Company or completion of a Sale Transaction. |
| ***Protective provisions:*** | Consent of a two thirds majority of the voting shareholders will be required for any action that (i) amends the Constitution of the Company if it would adversely alter the rights, preferences, privileges, or powers of the IP Investors; (ii) approves any merger, asset sale, liquidation or other corporate reorganization or acquisition.<br><br>The above provision, however, specifically excludes the Share Purchase Agreement between the IP Investors and the ESPP Trust. Any amendment that would alter the rights of the IP Investors under the Share Purchase Agreement will require the consent of two thirds majority of the IP Investors and the ESPP Trust. |
| ***Pre-emptive rights (to maintain proportionate ownership):*** | Each of the IP Investors will have a right to purchase its *pro rata* share of any offering of new shares by the Company, subject to customary exceptions. This right will terminate immediately prior to the Company's IPO or a Sale Transaction. |
| ***Waiver of Pre-emptive rights by Sedicii shareholders:*** | Prior to the transaction, the Company shall receive written waivers from current Company shareholders of their pre- |

emptive rights to participate in the sale of the Investment Shares.

**Co-Sale Rights:** Where an offer has been received to acquire Shares comprising more than 75% of the issued share capital of the Company and the shareholders holding 75% or more of the entire issued share capital of the Company in nominal value (the "***Proposed Transferors***") accept such offer in respect of the transfer of all of their respective shareholdings of such shares to the purchaser (the "***Proposed Transferee***"), the Proposed Transferors may require that each other Shareholder of the Company sell to the Proposed Transferee at the same time and on the same commercial terms received by the Proposed Transferors all of the Shares then held by such other Shareholder at the price offered by the Proposed Transferee.

**Election of Directors:** In respect of the Company, the IP Investors shall for so long as the IP Investors in aggregate hold at least 10% of the Ordinary Shares issued in the capital of the Company be entitled to nominate one person as director thereof and accordingly each of the Parties hereto shall exercise such voting rights as for the time being they may have in the Company and take such other steps as for the time being lies within their power to secure at the request of the IP Investors the appointment, removal or replacement as director of any such nominee.

The IP Investors shall for so long as the IP Investors in aggregate hold at least 5% of the Ordinary Shares issued in the capital of the Company be entitled to appoint and the Company shall accept the appointment of an observer (the "***Observer***"). The Observer shall be entitled to receive notice of, and attend at and speak, but not vote, at meetings of the Board of the Company and a meeting of the Board shall not be validly convened unless such notice has been provided. The Observer shall not receive any remuneration and/or expenses for attending Board meetings.

**Sale Transaction:** A "**Sale Transaction**" shall mean (i) any merger, amalgamation, reorganization, consolidation or other transaction involving the Company and any other Company or other entity or person in which the persons who were the shareholders of the Company immediately prior to such merger, amalgamation, reorganization, consolidation or other transaction own less than fifty percent (50%) of the

outstanding voting shares of the surviving or continuing entity after such merger, amalgamation, reorganization, consolidation or other transaction; (ii) the sale, exchange or transfer by the Company's shareholders, in a single transaction or series of related transactions, of all of the voting shares of the Company; or (iii) the sale of all or substantially all of the assets of the Company. Any Sale Transaction or similar event shall not negatively impact the Token Distribution and Master License Agreement.

If the Company accepts a proposed Sale Transaction offer before the Company's and ESPP Trust's obligations under the Share Purchase Agreement are met, the Company and the ESPP Trust will be obligated to ensure the rights and privledges of the IP Investors under the Share Purchase Agreement are fulfilled or unaltered.

## SHARE PURCHASE AGREEMENT

*Token Exchange:*  The IP Investors shall enter into the Share Purchase Agreement with the ESPP Trust giving the IP Investors the right to exchange all the Investment Shares for Integra Tokens held by the ESPP Trust at any time following the successful completion of the Private Token Sale and distribution of the Integra Tokens from the Integra Network (the ***"Token Exchange"***). The Token Exchange shall be done on the basis that a single Integra Token shall have a value of €0.034857 each, at a fully diluted valuation of €17.4 million, with 500 million Integra Tokens having been authorized for issuance. The exchange will involve the transfer of 135,610 Ordinary Shares of the Company for one hundred percent (100%) of all Integra Tokens distributed to the ESPP Trust, at an equivalent value of €610,000. The Token Exchange shall not be subject to any dilution or alteration except with the written approval of greater than two thirds of the IP Investors. Additionally, the Token Exchange and the rights of the IP Investors shall not be negatively altered in any way by future Shareholder Agreements, Share Subscription Agreements, or any other future agreements from Company or its Directors. Further, the Token Exchange and the rights of the IP Investors shall not be negatively altered in anyway by subsequent dilution or other events related to the issuance, allocation, or creation of new or additional shares of the Company. Upon completion of the Token Exchange, the Investment Shares shall be irrevocably transferred to the Sedicii Employee Share Participation Program Trust. The IP Investors, the ESPP Trust and the

Company agree to complete all required documentation to give full legal force to the transfer. Once completed the mutual transfers will be irrevocable.

***Token Exchange Timing:***   The IP Investors and the ESPP Trust shall execute the Token Exchange with timing such that the Token Exchange shall, to the extent possible, minimize the tax obligations of the Company and ESPP Trust, if any.

***Share Purchase Agreement:***   The ESPP Trust, the Company, and IP Investors will enter into a Share Purchase Agreement containing the Token Exchange terms, standard representations and warranties, with survival period of the greater of (i) six (6) months after the distribution of all owed Integra Tokens to the ESPP Trust from Integra Network or (ii) two (2) years.

## OTHER MATTERS

***Option pool:***   The number of Ordinary Shares reserved for issuance under the Company's Employee Share Participation Program (***"ESPP"***) is 270,000 shares. The Company is authorized to issue shares up to 12% of the issued share capital under the ESPP.

***Founder matters:***   Each Founder shall have transferred all relevant intellectual property to the Company, entered into an employment agreement with the Company.

***Fees and Expenses:***   Each IP Investor will bear its own fees and expenses incurred in the transactions contemplated by this term sheet.

***Expiration date:***   This terms sheet is effective until and will expire upon signing of the agreements outlined herein.

*(signature page follows)*

This Term Sheet may be executed in counterparts, which together will constitute one document. Electronic signatures shall have the same legal effect as original signatures.

**Sedicii Innovations Limited**

_Signature_

Robert Leslie
_Print name_

CEO
_Print title_

4 October, 2021
_Date_

**I**

_Signature_

Murad Khan
_Print name_

_Print title_

10/4/21
_Date_

## CAP TABLE (31 August, 2021)

| CAP TABLE | Type | Number / Percentage | |
|---|---|---|---|
| Robert Leslie | Ordinary | 1,512,000 | **45.34%** |
| | Ordinary | | |
| | Ordinary | | |
| ESPP - (Employee Share Options Program) | Ordinary | 270,000 | **8.10%** |
| | Ordinary | | |
| | Ordinary | | |
| | Ordinary | | |
| | Ordinary | | |
| | Ordinary | | |
| | Ordinary | | |
| | Ordinary | | |
| | Ordinary | | |
| *Planned Additional Investors Series* | *Ordinary* | *515,569* | ***15.46%*** |
| *IP Investors Series Equity Financing* | *Ordinary* | *135,610* | ***4.07%*** |
| TOTAL | | 3,334,620 | 100.00% |
| | | | |
| | Preference | 300,000 | |
| | | | |