UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MURAD MICHAEL KHAN, KYLE ARMOUR,
UNWORQ LLC, JONATHAN KUO, HAPPY WALTERS,
DAVID MALKA, *and* JAKE UDELL,

                           Plaintiffs,

-v-

SEDICII INNOVATIONS LIMITED *and*
ROBERT LESLIE, *individually and in his official capacity as Trustee of the Employee Share Participation Program*,

                           Defendants.

23 Civ. 1094 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Murad Michael Khan, Kyle Armour, Unworq LLC, Jonathan Kuo, Happy Walters, David Malka, and Jake Udell (collectively, the "IP Investors" or "plaintiffs"[1]) sue Sedicii Innovations Limited ("Sedicii") and its president, Robert Leslie, for fraudulently soliciting investments from them. Plaintiffs bring claims for fraudulent inducement, breach of contract, breach of fiduciary duty, and unjust enrichment under New York common law.

Defendants now move to dismiss for lack of personal jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), respectively, as well as on *forum non conveniens* grounds. For the reasons that follow, the Court dismisses the case,

---

[1] On February 22, 2024, the Court dismissed a complaint brought by the original plaintiff, IP Investors Group LLC, for lack of associational standing under Article III of the United States Constitution. Dkt. 36. The dismissal was without prejudice to plaintiff refiling the action on behalf of its individual members. On March 7, 2025, the Court granted leave to file the Second Amended Complaint. Dkt. 39-1 ("SAC"). The SAC now, consistent with Article III, purports to bring claims on behalf of the individual IP Investors.

1

without prejudice, for lack of personal jurisdiction under Rule 12(b)(2), and, in the alternative, based on the doctrine of *forum non conveniens*.

I. **Background**

   A. **Factual Allegations**[2]

      1. **The Parties**

*Plaintiffs*: Khan and Kuo are citizens and residents of New York. SAC ¶¶ 11, 17. Armour, Walters, and Malka are citizens and residents of Puerto Rico. *Id.* ¶¶ 13, 19, 21. Udell is a citizen and resident of California. *Id.* ¶ 23. Unworq LLC is a limited liability company whose sole member is a citizen and resident of Florida. *Id.* ¶¶ 14–15.

*Defendants*: Sedicii Innovations Limited is a corporation incorporated under the laws of Ireland. *Id.* ¶ 27. Leslie, a citizen and permanent resident of Ireland, is "president, member of the Board of Directors, primary corporate decision-maker," and "trustee of the trust—[*i.e.*,] controller of the majority of the ordinary shares" of Sedicii. *Id.* ¶¶ 30, 32 (capitalization altered); *see also* Dkt. 50 ("Leslie Decl.") ¶ 13.[3]

      2. **The Alleged Fraud**

In 2021, Sedicii was exploring a deal in which it would provide certain technology to Integra Network ("Integra"),[4] a cryptocurrency start-up venture. SAC ¶¶ 70, 73. The deal contemplated Sedicii transferring its intellectual property in exchange for a percentage of Integra

---

[2] The following facts, "taken as true to the extent they are uncontroverted by the defendant's affidavits," *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted), are drawn from the SAC and exhibits attached to and incorporated by it, *see Green v. Sinai Van Serv.*, No. 17 Civ. 3913, 2018 WL 340007, at *1 n.2 (S.D.N.Y. Jan. 8, 2018); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

[3] The SAC alleges that defendants acted as each other's agents in the conduct at issue in this case and are jointly liable for each other's acts and omissions. SAC ¶ 40.

[4] Integra was later renamed "Nillion." SAC ¶ 73.

2

"tokens," a form of cryptocurrency tied to the value of Integra. *Id.* ¶ 74. Leslie "highlighted the Integra deal" in various personal meetings, telephone calls, virtual meetings, and written communications, in an effort to solicit investments in Sedicii. *Id.* ¶ 73. Leslie was then under pressure to meet certain fundraising targets within months, so as to avoid a preferred shareholder buyback that would cost Sedicii approximately 900,000 euros. *Id.* ¶ 71. Failure to raise funds within that period "would have been a corporate death sentence" for Sedicii. *Id.* Faced with this "looming deadline," Leslie allegedly falsely represented in these communications that Sedicii was "ready, willing[,] and able" to enter into a lucrative business deal with Integra, "even though no deal had been closed." *Id.* ¶¶ 71, 74.

On an unspecified date in 2021, the SAC alleges, Leslie went on a "roadshow" to promote investments in Sedicii. *Id.* ¶ 65. This allegedly included traveling to New York and directly soliciting potential investors there, including plaintiffs. *Id.* ¶ 66. Leslie made statements to Kuo, Masanto, and others, to the effect that Leslie "control[led] Nillion" and that if they invested in Sedicii they "would get Nillion tokens." *Id.* ¶¶ 68–69. Leslie also represented that the terms of the agreement between Sedicii and Integra "had already been agreed upon" and that "Sedicii was in a position to comply with its obligation to close the deal." *Id.* ¶ 76 (cleaned up).

On September 10, 2021, Sedicii, per Leslie, and the IP Investors agreed to a "Summary of Terms for IP Series Equity Financing." *Id.* ¶¶ 1, 81–82; *see also* Dkt. 39-3 (the "September Agreement"). That document was termed a "binding equity financing term sheet" and reflected Leslie's representations to the IP Investors that he and Sedicii had finalized a deal with Integra. *Id.* ¶ 76, 84–86. The term sheet also represented that the plaintiffs would, on entering the deal, engage in a "token exchange" in which they would be granted "the right to exchange all Investment Shares for Integra Tokens . . . at any time following the successful completion of the

3

Private Token Sale and distribution of the Integra Tokens from the Integra Network." *Id.* ¶ 101. Consistent with the terms of the Agreement, Khan invested 25,000 euros in Sedicii; Unworq LLC, Walters, Malka, and Udell each invested 20,000 euros; and Armour and Kuo each invested 10,000 euros. *Id.* ¶¶ 10–22. Plaintiffs allege that they entered into the agreement in reliance upon Sedicii's representation that a deal had been finalized with Integra. *Id.* ¶ 78–80. They claim that, had they known "that Sedicii had no intention of executing an agreement with Integra, the investors would not have made their investment." *Id.* ¶ 80.

On December 31, 2021, the parties entered into an "Amended and Restated Shareholders Agreement." *Id.* ¶ 108; *see also* Dkt. 39-2 (the "December Agreement"). It imposed obligations consistent with the September Agreement. *Id.*; *see also* Pl. Br. at 2. It also differentiated between so-called "NYC Investors" and "Integra Investors"; the former would "enter into and complete the NYC Subscription Agreement," while the latter would "enter into and complete the Integra Subscription Agreement." December Agreement ¶ 2.1. Each plaintiff in this case was listed under the "Integra Investors" group and not the "NYC Investors" group. *Id.*; *see also id.* Schedule 1, Parts C–D.

The December Agreement, unlike the September Agreement, contained a "Law and Jurisdiction" provision. *Id.* ¶ 14.4. It stated:

> This Agreement and any dispute arising from it shall be governed by and construed in accordance with the laws of Ireland.
>
> Each of the Parties hereto irrevocably and unconditionally submits to the non-exclusive jurisdiction of the courts of Ireland for any of the purposes of this Agreement.

*Id.*

The SAC alleges that, in breach of their obligations under the September and December Agreements, defendants did not enter into an agreement with the Integra Network, and thus

4

"failed to provide the plaintiffs with any valid option to convert their investment into Integra tokens." SAC ¶ 109 (cleaned up). Plaintiffs seek damages of approximately $6.3 million. *Id.* at 30.

### B. Procedural History

On February 9, 2023, an entity terming itself "IP Investors Group LLC" filed an initial Complaint, bringing the same claims against Sedicii and Leslie. Dkt. 6. On June 20, 2023, defendants moved to dismiss. Dkt. 12. On June 21, 2023, the Court issued an order directing IP Investors Group LLC to amend the Complaint or oppose the motion. Dkt. 23. On July 11, 2023, IP Investors Group LLC filed the First Amended Complaint. Dkt. 24. On July 31, 2024, defendants moved again to dismiss. Dkt. 26. On August 28, 2023, IP Investors Group LLC opposed. Dkt. 32. On September 5, 2023, defendants replied. Dkt. 33.

On February 22, 2024, the Court dismissed the action. Dkt. 36. Although neither party had briefed the issue, the Court found that, on the pleadings, IP Investors Group LLC, the only plaintiff, had not pled facts supporting that it had satisfied associational standing requirements under Article III. *See id.* (citing *Irish Lesbian & Gay Org v. Giuliani*, 143 F.3d 638, 649 (2d Cir. 1998) (a plaintiff-organization's suit for damages on behalf of its members "requires the participation of individual members in the lawsuit" to show standing)). Although the then-plaintiff, IP Investors Group LLC, was, "as pled, not such an investor" in Sedicii, its members were. Dkt. 36 at 2. The Court thus dismissed the action without prejudice to refiling the action consistent with Article III standing requirements. *Id.* at 6. Any new such pleading, the Court directed, "may attempt to fortify the claim of organizational standing, or, as the FAC envisioned, bring claims on behalf of IP Investors' members." *Id.*

5

On December 11, 2024, a different collection of plaintiffs—to wit, the individual plaintiffs listed above—sought leave to file the SAC. Dkt. 38. The SAC brought claims for fraudulent inducement, breach of contract, breach of fiduciary duty, and unjust enrichment. It also named the individual members of IP Investors Group LLC who, as alleged, suffered financial harms as a result of their investments in Sedicii. SAC ¶¶ 10–22. On January 6, 2025, defendants opposed. Dkts. 41–43. On February 9, 2025, plaintiffs replied. Dkt. 46. On March 7, 2025, the Court granted leave to file an amended complaint. Dkt. 47. The Court concluded that, by dropping IP Investors Group LLC as plaintiff in lieu of the individuals who claim to have actually invested in Sedicii, plaintiffs had cured the standing deficiency that had required dismissal of the original complaint. Dkt. 47 at 2 ("By naming the individual members on behalf of whom IP Investors seeks to sue, the proposed SAC complies with the Court's directive to put forth pleadings consistent with the Article III standing requirement.").

On March 21, 2025, defendants filed a new motion to dismiss the SAC, this time arguing that personal jurisdiction was lacking, that the SAC did not state a claim, that the doctrine of *forum non conveniens* counseled dismissal, and that plaintiffs should instead join an identical suit filed in Ireland by a fellow investor pursuant to the forum selection clause in the parties' agreement. Dkt. 49 ("Def. Br."). On April 4, 2025, plaintiffs opposed. Dkt. 51 ("Pl. Br."). On April 11, 2025, defendants replied. Dkt. 52.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Applicable Legal Standards

#### 1. General Principles

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted). Although

6

waivable, personal jurisdiction "is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (cleaned up). "A plaintiff must carry his burden with respect to each defendant individually." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021); *see also In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). The plaintiff may make such a showing with "an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010). Where, as here, discovery has not yet commenced, the plaintiff need only put forth "legally sufficient allegations of jurisdiction" to survive a motion to dismiss for lack of personal jurisdiction. *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (citation omitted). However, "a plaintiff may not rely on 'conclusory non-fact-specific jurisdictional allegations' to overcome a motion to dismiss" for lack of personal jurisdiction. *Doe v. Del. State Police*, 939 F. Supp. 2d 313, 321 (S.D.N.Y. 2013) (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998)).

Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano*, 286 F.3d at 84–85. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Deiter*, 702 F.3d at 727 (citation omitted); *see also Zanotti v. Invention Submission Corp.*, No. 18 Civ. 5893, 2020 WL 2857304, at *5 (S.D.N.Y. June 2, 2020); *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, 457 F. Supp. 3d 401, 406 (S.D.N.Y. 2020).

To make out a *prima facie* case of personal jurisdiction, whether based on general or specific personal jurisdiction, plaintiffs must establish both a statutory basis for jurisdiction and that the exercise of such jurisdiction accords "with constitutional due process principles."

7

*Cortlandt St. Recovery Corp. v. Deutsche Bank AG, London Branch*, No. 14 Civ. 1568, 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)). General personal jurisdiction is based on the defendant's "continuous and systematic" contacts with a forum and subjects a defendant to suits on all claims there. *Id.* at *3; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Specific personal jurisdiction lies only where the defendant has "purposefully directed" its activities at residents of the forum, and where the claims "arise out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted).

2.  **General Jurisdiction**

Under New York law, the basis for general jurisdiction lies in N.Y. C.P.L.R. § 301. *See Stonegardens Advisory LLC v. DeepMedia.AI*, No. 24 Civ. 2178, 2024 WL 5047628, at *4 (S.D.N.Y. Dec. 9, 2024). This statute permits "jurisdiction over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. § 301. This statute, in effect, "allows courts in New York to exercise general personal jurisdiction over individuals who are domiciled in New York, have a physical presence in New York, consent to New York's exercise of jurisdiction, or do business in New York." *Delgado-Perez v. City of New York*, No. 17 Civ. 1194, 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018) (cleaned up).

The Due Process Clause of the Fifth Amendment, however, imposes greater restrictions on general jurisdiction. A court may exercise general jurisdiction over a defendant only where "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires*, 564 U.S. at 919 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)). "Except in a truly exceptional case, a corporate defendant may be treated as essentially at home," and,

thus, amenable to general personal jurisdiction, "only where it is incorporated or maintains its principal place of business." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (cleaned up).

### 3. Specific Jurisdiction

New York's long-arm statute, N.Y. C.P.L.R. § 302, provides for personal jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state," "commits a tortious act within the state," or "commits a tortious act without the state causing injury to person or property within the state[.]" *Id.* § 302(a). The Court's primary consideration under § 302(a)(1) is "[t]he quality of the defendants' New York contacts." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 62 (2d Cir. 2012) (citation omitted).

Section 302(a)(1) permits personal jurisdiction under narrower conditions than does the Due Process Clause under the U.S. Constitution. Because "the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances [than] N.Y. C.P.L.R. § 302, . . . a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008); *United States v. Montreal Tr. Co.*, 358 F.2d 239, 242 (2d Cir. 1966) ("New York in enacting § 302 has not sought to obtain full *in personam* jurisdiction over non-domiciliaries who transact business within its boundaries. Rather, New York has limited itself to jurisdiction only in those 'causes of action' arising out of activity conducted within the state."). Accordingly, if the Due Process Clause does not permit the exercise of jurisdiction, neither will C.P.L.R. § 302. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal

9

jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements.").

### B. Discussion

#### 1. General Jurisdiction

The IP Investors fall well short of establishing general jurisdiction over defendants. They do not allege that Sedicii was incorporated, or that it maintains its principal place of business, in New York. They allege only that, "[u]pon information and belief," Sedicii "maintains and makes heavy use of bank accounts in New York State," SAC ¶ 45, and has subsidiaries located within New York State, *id.* ¶ 46.

Plaintiffs' "information and belief" pleadings on these points are unspecific and unsourced. They cannot be credited as a basis for finding personal jurisdiction. *See, e.g., Zanotti v. Invention Submission Corp.*, No. 18 Civ. 5893, 2020 WL 2857304, at *16 (S.D.N.Y. June 2, 2020) ("Conclusory allegations showing the presence of jurisdiction, particularly those stated only upon information and belief, are insufficient to establish that the court has personal jurisdiction over the defendant." (citation omitted)); *Felske v. Hirschmann*, No. 10 Civ. 8899, 2012 WL 716632, at *4 (S.D.N.Y. Mar. 1, 2012) (same); *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 472 (E.D.N.Y. 2015) (same). And even if the facts that plaintiffs conjure had been well pled, these do not support that that defendants' contacts were so "continuous and systematic" to support a finding of general personal jurisdiction. *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). The SAC does not allege any other fact that might support finding general jurisdiction. It does not, for example, allege that Sedicii was licensed or registered to do business in New York, *see Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 134–35 (2023) (a corporation's being registered to do business in a state weighs in favor of general jurisdiction), or that Sedicii has significant numbers of employees in New York, *see Forstech*

10

*Tech. Nigeria Ltd. v. Shell Petroleum Dev. Co. of Nigeria Ltd.*, No. 24 Civ. 7629, 2025 WL 1435203, at *4 (S.D.N.Y. May 19, 2025) (absence of such weighs against general jurisdiction).

Moreover, the facts averred by the defense, which plaintiffs tellingly do not factually refute, concretely refute plaintiffs' speculation about New York bank accounts and subsidiaries. Leslie states that neither he nor Sedicii "ha[ve] ever regularly conducted business in New York," "ha[ve] any bank accounts in New York State or New York City," nor "ha[ve] any subsidiary in New York State or New York City." Leslie Decl. ¶¶ 8–10. Leslie further attests that he "never went on a 'roadshow' to pitch investors for Sedicii, and [he] did not travel anywhere to pitch investors for Sedicii." *Id.* ¶ 2 (capitalization altered). This sworn affidavit is sufficient to controvert the conclusory allegations in plaintiffs' complaint. *See, e.g., Creative Photographers, Inc. v. Grupo Televisa*, 763 F. Supp. 3d 618, 632 (S.D.N.Y. 2025) ("[C]onclusory, unsupported allegations cannot support a finding of personal jurisdiction, particularly because they are contradicted by the facts set forth in Defendant's affidavit" (citation omitted)); *Knight v. Standard Chartered Bank*, 531 F. Supp. 3d 755, 760 n.1 (S.D.N.Y. 2021) ("On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside the pleadings, including accompanying affidavits, declarations, and other written materials."); *Laufer Grp. Int'l, Ltd. v. Standard Furniture Mfg. Co., LLC*, No. 19 Civ. 10885, 2020 WL 4735123, at *2 (S.D.N.Y. Aug. 14, 2020) ("When a defendant provides affidavits to support a Rule 12(b)(2) motion, the plaintiff may not simply rest on the allegations of the complaint." (citing 4 Charles Alan Wright et al., Federal Practice and Procedure § 1067.6 (4th ed. 2019))).

Leslie's sworn statement also weighs against general jurisdiction, in that he attests that he "did not travel to New York in 2020 or 2021," with the exception of two four-hour layovers at

11

JFK International Airport in December 2021. Leslie Decl. ¶¶ 6–7; *see, e.g.*, *Everything Yogurt Brands, LLC v. Bianco*, No. 23 Civ. 1161, 2024 WL 3497757, at *6 (S.D.N.Y. July 22, 2024) (no general personal jurisdiction in part because defendant never physically appeared in New York); *Wallace Church & Co. Inc. v. Wyattzier, LLC*, No. 20 Civ. 1914, 2020 WL 4369850, at *4 (S.D.N.Y. July 30, 2020) ("To determine whether a defendant does business in the state, the Court must be able to say from the facts that the defendant is present in the State not occasionally or casually, but with a fair measure of permanence and continuity." (citation omitted)). Plaintiffs have not come forward with any facts contradicting that representation.

The Court thus lacks general personal jurisdiction over the defendants.

### 2. Specific Jurisdiction

The Court next considers whether there is specific personal jurisdiction over the defendants. *See Goodyear Dunlop Tires*, 564 U.S. at 919. The IP Investors identify five ostensible bases for such jurisdiction: (1) Sedicii's alleged use of bank accounts within New York, SAC ¶ 45; (2) the alleged presence of subsidiaries and agents of Sedicii within New York, *id.* ¶ 46; (3) Leslie's New York roadshow, *id.* ¶¶ 65–66; (4) the December Agreement's reference to "NYC Investors," *id.* ¶ 48; and (5) the SAC's allegation that "[t]he vast majority of funds that Sedicii raised was in New York and from shareholders residing in New York," *id.* ¶ 47 (cleaned up). These fall far short of the necessary showing.

*First*, as noted, defendants have refuted, in sworn statements, plaintiffs' unsourced and general "information and belief" allegations that Sedicii used bank accounts in New York, had subsidiaries in New York, or engaged in a "roadshow" in or directed at New York. *See* Leslie Decl. ¶¶ 2, 9–10; *see also Deiter*, 702 F.3d at 727 ("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." (citation

12

omitted)). Crediting those unrefuted affidavits, the Court rejects those three cited bases for specific jurisdiction.

*Second*, as to the December Agreement's reference to "NYC Investors," the SAC does not support that this label reflects any conduct in New York relating to plaintiffs. On the contrary, the December Agreement identifies the named plaintiffs in this case as "Integra Investors"—not as "NYC Investors." December Agreement at Schedule 1, Parts C–D. That other alleged victims of defendants' conduct are denoted as "NYC Investors," SAC ¶ 48, does not, without more, support that the claims at issue in this case "arise out of or relate to" defendants' New York-related contacts with the IP Investors, *Burger King Corp.*, 471 U.S. at 472.

*Finally*, the SAC alleges, without support, that the "vast majority" of funds Sedicii raised was (1) in New York and (2) from shareholders residing in New York. SAC ¶ 47. As to the second point, the SAC itself elsewhere undermines this claim, in that it alleges that only a small fraction—less than 6%—of the total investment came from New York-based plaintiff investors. *Id.* ¶¶ 1, 10, 16 (alleging that they contributed, collectively, 35,000 euros, whereas the total investment was 610,000 euros); Def. Br. at 6–7. As to the first point, defendants' sworn statements refute the SAC's conclusory claim that defendants did any in-person solicitation of investments in New York. *See* Leslie Decl. ¶ 3.

That leaves the SAC's allegation that Leslie made false representations about Sedicii's relationship with Integra "over the phone" to the New York-based investors. SAC ¶¶ 119–20. As an initial matter, Leslie avers that he did not make any such calls. *See* Leslie Decl. ¶ 3. Even if Leslie's affidavit had not been submitted, plaintiffs' allegations would not carry the day. Mere telephone calls to individuals located in a particular state, without more, are insufficient to give

13

rise to specific jurisdiction. *See Seldon v. Magedson*, No. 11 Civ. 6218, 2012 WL 4475020, at *5 (S.D.N.Y. Sept. 28, 2012) ("New York Courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communications from another locale with a party in New York." (citation omitted)); *On Line Mktg. Inc. v. Thompson Outfitters, Inc.*, No. 99 Civ. 10411, 2000 WL 426426, at *3 (S.D.N.Y. Apr. 20, 2000) ("A finding that defendant 'purposely availed' itself of the benefits of New York may not be inferred from mere acts of telephoning . . . plaintiffs."); *Copeland v. Life Sci. Techs., Ltd.*, No. 97 Civ. 0456, 1997 WL 716915, at *2 (S.D.N.Y. Nov. 17, 1997) (same).

Both general and specific jurisdiction are thus lacking. That requires dismissal, without prejudice, of plaintiffs' claims. *See, e.g., Vanek v. Samsung EMS Co.*, No. 23 Civ. 3127, 2024 WL 4894344, at *2 (S.D.N.Y. Nov. 26, 2024); *Wahlhuetter v. CollegeHumor.com, LLC*, No. 19 Civ. 1501, 2022 WL 19701, at *2 (S.D.N.Y. Jan. 3, 2022); *Verragio, Ltd. v. Malakan Diamond Co.*, No. 16 Civ. 4634, 2016 WL 6561384, at *5 (S.D.N.Y. Oct. 20, 2016).[5]

### III.  Motion to Dismiss on *Forum Non Conveniens* Grounds

In the alternative, dismissal, without prejudice, on *forum non conveniens* grounds is warranted.

#### A.  Applicable Legal Standards

The doctrine of *forum non conveniens* is "a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over

---

[5] The Court denies plaintiffs' request for jurisdictional discovery. District courts enjoy "broad discretion" in deciding whether to order discovery. *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 811–12 (S.D.N.Y. 2005) (collecting cases), *aff'd*, 538 F.3d 71 (2d Cir. 2008). In general, courts permit jurisdictional discovery when the opposing party possesses facts capable of establishing jurisdiction. *See Togut v. Forever 21, Inc.*, 285 F. Supp. 3d 643, 648 (S.D.N.Y. 2018). Here, however, the IP Investors have not come close to supporting their claim of general or personal jurisdiction. Various of their allegations made on information and belief have proven false. And plaintiffs have not recited any concrete basis to believe that discovery

14

the claim." *Glob. Art Exhibitions, Inc. v. Kuhn & Bulow Italia Versicherungsmakler GmbH*, 607 F. Supp. 3d 421, 436 (S.D.N.Y. 2022) (quoting *Carey v. Bayerische Hypo–Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004)). To dismiss on *forum non conveniens* grounds, a court must (1) "determine the degree of deference properly accorded the plaintiff's choice of forum," (2) "consider whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute," and (3) "balance the private and public interests implicated in the choice of forum." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005) (cleaned up).

A defendant "ordinarily bears a heavy burden" in invoking *forum non conveniens*. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007). Dismissal is warranted "only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 74–75 (2d Cir. 2001). Motions to dismiss on *forum non conveniens* grounds have largely been replaced by motions to transfer venue under 28 U.S.C. § 1404 except under specific circumstances. *See Rosenman & Colin LLP v. Sandler*, No. 1 Civ. 7123, 2002 WL 83657, *3 (S.D.N.Y. Jan. 18, 2002) ("[S]ince the enactment of 28 U.S.C. § 1404, it is only when the more convenient forum is in a foreign country—or, perhaps, under rare circumstances, in a state court or a territorial court—that a suit brought in a proper federal venue can be dismissed on grounds of *forum non conveniens*." (citation omitted)). A court deciding a motion to dismiss on *forum non conveniens* grounds "may consider the pleadings as well as affidavits from both moving and opposing

---

would reveal a connection to New York to support jurisdiction. In these circumstances, plaintiffs' bid for jurisdictional discovery is quite weak. *See Jazini*, 148 F.3d at 186 (2d Cir. 1998); *Wallert v. Atlan*, 141 F. Supp. 3d 258, 287 (S.D.N.Y. 2015).

15

parties." *Glob. Art Exhibitions*, 607 F. Supp. 3d at 436 (citing *Martinez v. Bloomberg LP*, 740 F.3d 211, 216 (2d Cir. 2014)).

**B.     Discussion**

Here, the assembled factors strongly favor litigating this dispute in Ireland, and thus, dismissal on *forum non conveniens* grounds.

As to the first factor, courts give a high degree of deference to the plaintiff's choice of forum. *See Stonegardens*, 2024 WL 5047628, at *9. This deference is not, however, absolute. *See Iragorri*, 274 F.3d at 71. Such deference is strengthened to the extent that the plaintiff or the lawsuit has connections to the forum. *See id.* at 72. Here, two plaintiffs are from New York—although, as noted, the lawsuit itself has limited connections to this district. *See supra*, sec. II.B.

A court must next consider whether the proposed alternative forum is adequate. "An alternative forum is adequate if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003). Both are true here. The December Agreement contains a choice-of-law provision directing that disputes under the agreement are governed by Irish law, and a forum selection clause in which the parties consented to litigate those disputes in Irish courts. *See* ¶ 14.14. And Sedicii is an Irish corporation, independently making it amenable to service of process in Ireland. These factors favor resolution of the case in Ireland.

Reinforcing the preferability of an Irish forum, investors, including plaintiff in this case, have filed effectively identical claims against the same defendants in an Irish court. And that case, filed before the SAC was filed, is pending. *See* Dkt. 50, Ex. A (plenary summons from Irish court). The interests of judicial economy strongly favor hearing these claims in a single forum. *See Foresight Luxembourg Solar 1 S.A.R.L. v. Kingdom of Spain*, No. 19 Civ. 3171,

2020 WL 1503192, at *5 (S.D.N.Y. Mar. 30, 2020); *Gokhberg v. The Pnc Fin. Servs. Grp., Inc.*, No. 15 Civ. 6001, 2015 WL 9302837, at *2 (S.D.N.Y. Dec. 21, 2015).

Finally, public and private interest factors favor an Irish forum. *See Norex Petroleum*, 416 F.3d at 153. Private interest factors include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (citation omitted). Public interest factors include "administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (citation omitted).

As to private interest factors, the defendants are located in Ireland and have had minimal contacts with New York. *See Transunion Corp. v. PepsiCo, Inc.*, 811 F.2d 127, 129 (2d Cir. 1987). Leslie credibly represents that, as an Irish citizen and resident, "it will be incredibly burdensome for [him] to travel to the United States repeatedly to defend [his] interests in this litigation." Leslie Decl. ¶ 13. And plaintiffs' sweeping claim that "the vast majority of the parties, witnesses, and evidence is in New York," Pl. Br. at 15 (cleaned up), is conclusory, unsubstantiated, and suspect, in light of the falsity of plaintiffs' other conclusory claims (*e.g.*, about defendants' supposed New York bank accounts and subsidiaries). There is nothing in the

17

SAC to support that allegation. The defense, in contrast, represents that several of its witnesses reside in Ireland. Leslie Decl. ¶ 14.

As to public interest factors, in light of the related actions underway in Ireland, holding all claims there, in a common proceeding, would "substantially advance the interests of fairness, efficiency and judicial economy." *Bent v. Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555, 2016 WL 153092, at *6 (S.D.N.Y. Jan. 12, 2016) (transfer appropriate where it would "prevent duplicative proceedings, avoid inconsistent results, and reduce the overall burden on the parties, non-party witnesses and the judicial system." (cleaned up)). Insofar as the dispute is governed by Irish law, an Irish court is best-situated to resolve substantive legal issues that may be implicated. *See Holzman v. Guoqiang Xin*, No. 12 Civ. 8405, 2015 WL 5544357, at *10 (S.D.N.Y. Sept. 18, 2015) ("United States courts have virtually no interest in resolving disputes governed exclusively by foreign law." (citation omitted)). Finally, that the defendants are Irish and that the plaintiffs (while from various venues) have consented to Ireland as a forum, supports that the controversy has greater local significance to Ireland than the United States. *See Star Colbert v. Dougan*, 724 F. Supp. 3d 304, 337 (S.D.N.Y. 2024).

The Court thus finds *forum non conveniens* an alternative basis upon which to dismiss this case. *See id.* at 318 (dismissing on *forum non conveniens* grounds where plaintiffs sued for violations of Swiss law); *Fagan v. Deutsche Bundesbank*, 438 F. Supp. 2d 376, 384 (S.D.N.Y. 2006) (similar, where public and private interest factors favored hearing the case in Germany); *Dattner v. Conagra Foods, Inc.*, No. 1 Civ. 11297, 2003 WL 1740448, at *6 (S.D.N.Y. Apr. 2, 2003) (same), *aff'd*, 91 F. App'x 179 (2d Cir. 2004). The dismissal on this ground is of course without prejudice, so as to enable plaintiffs to pursue this action in the more convenient forum (the Irish courts) identified herein.

## CONCLUSION

For the reasons above, the Court dismisses, without prejudice, the SAC, both for lack of personal jurisdiction and on the ground of *forum non conveniens*. In light of this dismissal, the Court has not reached defendants' motions to dismiss based on Rule 12(b)(6). The Clerk of Court is respectfully directed to terminate the motion pending at Docket 48 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: July 28, 2025
New York, New York